28   137
29   604

28   137
30   276
30   422

## HARRISON BOYD V. THE STATE.

*No. 3257.    Decided November 2.*

1.  **Murder—Malice.**—Charge of the Court in a murder case, although it defines express and implied malice, is fundamentally erroneous if it omits to define "malice aforethought."

2.  **Same.**—See the statement of the case for a state of proof on a murder trial, under which it is held that the trial court should have submitted to the jury the provisions of article 612 of the Penal Code, to the effect that "the instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending," etc.; and of article 614 of the same Code, to the effect that "where a homicide occurs under the influence of sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of the homicide unless it appear that there was an intention to kill, but the party from whose act the death resulted may be prosecuted for and convicted of any grade of assault and battery."

3.  **Same—Manslaughter.**—See the statement of the case for evidence in view of which it is *held* that the trial court erred in omitting to instruct the jury upon the law of manslaughter.    And note that the proof did not raise the issue of self-defense, which therefore was properly omitted from the charge.

4.  **Same—Implied Malice.**—The charge of the court, in explaining implied malice to the jury, requires that, in order to reduce the homicide to a lower grade than murder of the second degree, the homicide should have been committed under such circumstances as fail to show that it was committed under the immediate influence of sudden passion arising from a sudden and *powerful provocation, as a violent blow or the like,* etc.    *Held,* error.    See the opinion for such a charge as, under the facts in proof, should have been given in explanation of implied malice.

APPEAL from the District Court of Harrison.    Tried below before Hon. A. J. Booty.

This conviction was in the second degree for the murder of Jordan Childs, in Harrison County, Texas, on the 9th day of September, 1889. The penalty assessed against the appellant was a term of fifteen years in the penitentiary.

Justice of the peace Perry was the first witness for the State.    He testified that he examined the body of the deceased on the night of the fatal

day. It was then lying near a cane mill, about eight miles from Marshall, in Harrison County. The skull was fractured—the fracture being three or four inches long and two or three inches wide, extending from the top toward the left side of the head. The left hand was hanging in a sling, evidently to prevent pressure on a boil under the arm. The stick exhibited in evidence was found by the witness near the cane mill. It is a solid post oak stick, about four feet long and about an inch and a half in diameter at the small end, and will weigh about five pounds. At the inquest, which the witness held on the next morning, the defendant, after due warning, made the voluntary statement which, in substance, was the same as his testimony hereinafter summarized.

Susan Roberson testified for the State that she was near the cane mill at the time of the homicide. She heard the sound of a blow, followed by the screaming of a woman. Going at once to the cane mill she found Childs lying on the ground, with the defendant grasping his right hand and endeavoring to raise him up. Witness asked defendant, "Cousin Harrison, what have you done?" He replied, "I have killed Jordan." Witness asked him, "What did you do it for?" He replied, "I hit him harder than I intended to." Witness asked him what he struck the deceased with, and in reply he said, "that stick," pointing to the stick in evidence.

J. D. McFarlin testified for the State that he was at the cane mill just before the killing occurred. The mill was owned by the defendant and deceased jointly, and was operated by them to grind cane for the public. When witness got to the mill a few minutes before the killing he found defendant grinding cane. Deceased, with his left arm in a sling, was sitting on a fence about forty feet distant from the mill. Referring to a certain pile of cane the witness asked who owned it. Defendant replied that it belonged to a certain Mr. ——, and that Mr. —— had better take it away as it would spoil. The deceased remarked, "You need not worry yourself about that cane; it will be attended to." Defendant replied, "It seems that you have got all the molasses you want, and that you are not going to help grind any more." Deceased retorted, "You are a liar!" Defendant replied, "That's all right." Deceased got off the fence, reiterated, "You are a liar!" and started toward defendant. The witness then left, going to the house of ——. Soon afterwards he started back to the mill and met defendant, of whom he inquired the cause of the screaming at the mill. Defendant replied, "Oh, Mack! I have killed Jordan." Witness asked him why he did it, and he replied, "I did not go to hit him so hard." Defendant and deceased, the latter advancing upon the former, were disputing when the witness left the mill. Deceased was talking mildly and the defendant "rashly."

Defendant testified, in his own behalf, that while he was at work at the cane mill on the fatal evening, the deceased, Mr. McFarlin, and sev-

eral other parties came to the mill. It was then about three o'clock. After a while all of the parties left except the deceased, McFarlin, and witness's wife. McFarlin then asked witness who owned a certain quantity of cane. Witness replied that Mr. —— owned it, and that he had better take it away, as it was spoiling. Deceased, who was then sitting on the fence, replied, "Never you mind about that cane, it will be attended to." Witness said to the deceased, "Jordan, it seems that since you have all the molasses you want, you don't intend to help grind any more." Deceased replied, "You are a liar." Witness replied, "That is all right, Jordan." Deceased then got off the fence, advanced towards witness, and continued to call him a liar. Witness replied that deceased was a liar. Deceased continued to advance, denouncing the witness as a liar, with offensive adjectives prefixed, and finally witness seized the stick, and striking over the beam of the mill, hit deceased on the head, felling him. The witness realized instantly that he had struck the deceased much harder than he intended, and at once raised the deceased, and called to his, witness's, wife to bring him some water. The witness did not intend to kill the deceased, nor to strike as severe a blow as he did strike.

*Alexander Pope*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, for the State.

WILLSON, JUDGE.—While the charge of the court explains express and implied malice, it fails to define malice aforethought, and is therefore fundamentally erroneous. Babb v. The State, 12 Texas Ct. App., 491; Holmes v. The State, 11 Texas Ct. App., 223; Garza v. The State, Id., 345; Crooks v. The State, 27 Texas Ct. App., 198.

An important issue in the case was whether or not the mortal blow was inflicted by defendant with the intent to kill the deceased. His declarations, made immediately after the blow was inflicted, are to the effect that he did not intend to kill the deceased. In view of the evidence presenting this issue, we think the court should have charged the law as declared in articles 612 and 614 of the Penal Code. Special instructions calling attention to this phase of the case were requested by defendant's counsel, and while such special instructions did not present the law accurately, they were sufficient to direct the mind of the court to the issue and the omission from the charge of that issue.

We are of the opinion that the evidence presented the issue of manslaughter, and that appropriate instructions should have been given the jury upon that grade of homicide.

We think the objections urged to the explanation of implied malice given in the charge are sound. It requires, in order to reduce the homi-

cide to a lower grade than murder in the second degree, that the homicide should have been committed under such circumstances as fail to show that it was committed under the immediate influence of sudden passion, arising from a sudden and *powerful provocation, as a violent blow or the like,* etc.; whereas, the law is that if it was committed under the immediate influence of sudden passion arising from an adequate cause—that is, such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection—the homicide would be manslaughter and not murder. Penal Code, arts. 593–95; Morgan v. The State, 16 Texas Ct. App., 593. In this case a proper explanation of implied malice would have been: "Implied malice is that which the law infers from or imputes to certain acts. Thus, when the fact of an unlawful killing is established, and there are no circumstances in evidence which tend to establish the existence of express malice, nor which tend to mitigate, excuse, or justify the act, then the law implies malice. If, therefore, you believe from the evidence that the defendant unlawfully killed the deceased, and in doing so did not act under the immediate influence of sudden anger, rage, resentment, or terror arising from an adequate cause—that is, such cause as would commonly produce such passion in a degree that would, in a person of ordinary temper, render the mind incapable of cool reflection—the killing would be upon implied malice, and he would be guilty of murder in the second degree."

We do not think that the evidence demanded any instructions upon the law of self-defense. While it tends to show an unlawful attack by deceased upon defendant, it does not show that such attack was of that character which would produce a reasonable expectation or fear of death or serious bodily injury to the defendant. Penal Code, art. 574.

For the errors and omissions in the charge of the court which we have specified, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Hurt, J., absent.